UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | | |
|---|---|---|
| BELEN MARTINEZ, | ) | No. EDCV 09-1721-CW |
| Plaintiff, | ) | DECISION AND ORDER |
| v. | ) | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) | |
| Defendant. | ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge. Plaintiff seeks review of the denial of disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. The court finds this matter should be reversed and remanded for further administrative proceedings consistent with this decision and order.

## I. **BACKGROUND**

Plaintiff Belen Martinez was born on September 14, 1971, and was 37-years old at the time of her third administrative hearing, which is the subject of this order. [Administrative Record ("AR") 62.] She has a high school education, was trained as a teachers' assistant [AR

1

116], and has past relevant work experience as a health facility clerk, receptionist, and teacher aide. [AR 18, 131-36, 395.]

Plaintiff alleges disability on the basis of carpal tunnel syndrome, reflex sympathic dystrophy, osteoarthritis and bone spurs. [AR 110.]

## II. **PROCEEDINGS**

This is plaintiff's third appeal in a series of denials of her request for DIB and SSI benefits.[1]

In brief, the relevant procedural background is as follows. Plaintiff applied for DIB and SSI benefits in 2002, alleging disability since 1996. [AR 65-67, 364-65.] She requested a hearing and, in 2004, represented by the same law firm representing her today, appeared and testified before an Administrative Law Judge ("ALJ"). [AR 377-95.] After that hearing, the Commissioner determined plaintiff was not disabled under the social security act. [See AR 13-19.] Plaintiff appealed the denial of benefits to this court and, on June 27, 2006, the matter was remanded for further administrative proceedings because the credibility evaluation was found to be inadequate.

On April 2, 2007, a second hearing was held before an ALJ at which plaintiff again appeared and testified [AR 379-84]; the Commissioner again denied plaintiff's request for benefits. [AR 389-396.] Plaintiff appealed the denial to this court and, on June 19, 2008, the matter was remanded for further proceedings because the assessment of plaintiff's allegations of depression was found to be inadequate.

Plaintiff's third hearing was held on February 20, 2009. [AR

---

[1] See Case Nos. CV-07-1130-CW and CV-05-554-CW.

691-705.] Plaintiff again appeared and testified, as did Joseph M. Mooney, a vocational expert ("VE"). [See Id.] On June 17, 2009, the ALJ issued a written decision finding plaintiff not disabled and denying benefits. [AR 548-556.]

Plaintiff lodged the complaint in this matter on September 4, 2009; it was filed on September 11, 2009. On March 17, 2010, defendant filed an answer and the certified administrative record. On May 19, 2010, the parties filed a Joint Stipulation ("JS"). This matter has been taken under submission without oral argument.

### III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

Substantial evidence is "more than a scintilla," but "less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole,

"weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. If the evidence reasonably supports either affirming or reversing, the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## IV. DISCUSSION

### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or

4

"not disabled" at any step, there is no need to complete further steps. <u>Tackett</u>, 180 F.3d 1098; 20 C.F.R. §§ 404.1520, 416.920.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. <u>Tackett</u>, 180 F.3d at 1098 and n.3; <u>Smolen</u>, 80 F.3d at 1288. If this burden is met, a *prima facie* case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[2], age, education, and work experience, a claimant can perform other work which is available in significant numbers. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520, 416.920.

**B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

In the decision at issue here, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date (step one); that she has a "severe" impairment of the musculoskeletal system (step two); and that she did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 550-51.] Plaintiff was found to have the RFC to:

> [P]erform a limited range of light exertion. [She] can lift and carry 20 pounds occasionally and 10 pounds frequently. She can

---

[2] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993); <u>Cooper</u>, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. <u>Penny</u>, 2 F.3d at 959; <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

5

stand and walk for 6 hours out of an 8-hour work day, and she can sit for 6 hours out of an 8-hour work day. [She] is limited to frequent handling, fingering, feeling, pushing, and pulling with the right upper extremity. She can occasionally climb ladders or scaffolds; and she can occasionally crawl. She can frequently balance, stoop, kneel, and crouch. She can frequently work at unprotected heights, work with moving mechanical parts, and operate a motor vehicle. She is limited to unskilled, entry level work, with an SVP[3] no greater than 2.

[AR 551.]

The ALJ found plaintiff is unable to perform any past relevant work (step four) and that she had no transferable job skills. [AR 554.]

The VE testified that, nonetheless, a person of plaintiff's age, education, work experience, and RFC could perform the requirements of thousands of jobs. [AR 703-04.] Accordingly, plaintiff was found not "disabled" as defined by the Social Security Act. [AR 555-56.]

**C. ISSUES IN DISPUTE**

The parties dispute whether:

1. The ALJ's reasons for rejecting the opinions of a psychological consultative examiner, Dr. Douglas Larson, Ph.D., were legitimate;

2. The mental RFC assessment was nonetheless based on substantial evidence;

3. The ALJ's limitation of plaintiff to unskilled jobs with an SVP 2 rendered harmless any error relating to the assessment

---

[3] "Specific Vocational Preparation."

|   |     |                                                                  |
|---|-----|------------------------------------------------------------------|
| 1 |     | of Dr. Larson's opined mental health limitations;                |
| 2 | 4.  | The ALJ provided legitimate reasons for giving greater           |
| 3 |     | weight to the opinion of a consultative examiner than to the     |
| 4 |     | opinions of treating pain specialist Dr. Bryant C. Leung;        |
| 5 | 5.  | The credibility assessment was proper;                           |
| 6 | 6.  | Any closed periods of disability exist, if plaintiff is          |
| 7 |     | found not to be disabled throughout the entire relevant          |
| 8 |     | period.                                                          |

(JS 4.)

**D.  ISSUES ONE, TWO, AND THREE: MENTAL FUNCTIONING**

The crux of the first three issues is whether the decision is in error because the RFC arguably encompassed only one of the three mental functioning limitations opined by consultative examining psychologist Dr. Larson, or whether the RFC was nonetheless sufficient.

Dr. Larson opined that plaintiff had three moderate impairments in her mental functioning, in her abilities to:

- understand, remember, carry out, or make judgments as to simple instructions (but not complex ones);
- interact appropriately with the public, supervisors, and coworkers; and
- respond appropriately to usual work situations and to changes in a routine work setting.

[AR 610.]

The ALJ found Dr. Larson's opinion to be of "not the least persuasive value" and ultimately, "out of an abundance of caution" [AR 555], limited plaintiff to work that required mental functioning at the "unskilled" level with an SVP 2. [AR 553.]

7

As with the opinion of a treating physician, an ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(citations omitted). Even the contradicted opinion of an examining doctor may be rejected only for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. None of the four reasons cited by the ALJ in rejecting Dr. Larson's opinions meets these standards.

First, the ALJ rejected Dr. Larson's opinion as a whole because the ALJ "asked for a psychiatric consultative examination, but the State Agency ignored my request and sent the matter to a psychologist."[4] [AR 553.] This is not a legitimate reason to reject Dr. Larson's findings. While Commissioner is correct that the ALJ may consider a source's specialty in weighing his opinion, (JS 13), Dr. Larson's specialty is psychology, [AR 611], and he is an acceptable medical source. E.g., 20 C.F.R. §§ 404.1502(a)(2), 416.902(a)(2).

Second, the ALJ rejected Dr. Larson's opinion because he "either

---

[4] In the joint stipulation, the Commissioner argues at length that the ALJ's assessment is legally sufficient because the opinion of a prior examining psychiatrist, Linda Smith, M.D., conflicts with Dr. Larson's. [e.g., JS 11-12.] The decision does not articulate this as a reason for rejecting Dr. Larson's report, however, and the court is constrained to base its opinion on reasons actually articulated by the ALJ in his decision. See, e.g., Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

To the extent the ALJ's statement that he "asked for a psychiatric consultative examination" could be read as finding that Dr. Smith's report has greater value than Dr. Larson's, this is not a legally sufficient evaluation. The ALJ must offer specific reasons for crediting one source opinion over another, which he did not do here. See Lester v. Chater, 81 F.3d at 830. Indeed, there is no evident reason to find Dr. Larson's report less persuasive, given, for example, that his examination is the more recent (occurring in November 2008 whereas Dr. Smith's took place in January 2007) and that his opinion was based both on his independent examination and a review of thirteen of plaintiff's prior records, whereas Dr. Smith considered no prior records. [Compare AR 429-437 with AR 603-11].

8

did not know or completely ignored [plaintiff's] activities of daily living, her care for several children, and her management of their finances." [AR 553-54.] In fact, the record reflects that Dr. Larson discussed plaintiff's family situation and finances at multiple points in his report. [E.g., AR 605-07.]

Third, the ALJ rejected Dr. Larson's opinion because his assessment was "grossly exaggerated and unsupported by his largely benign examination." [AR 554.] While an ALJ may reject an opinion on the basis that it is contradicted or unsupported by the notes of the examination, e.g., Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003), the ALJ here did not point to – nor does there appear to be – any conflict or incongruity warranting an outright rejection of Dr. Larson's opinion.

Finally, the ALJ rejected Dr. Larson's opinion because "he based it on a report by an unacceptable medical source without supporting treatment notes." [AR 554.] This relates to Dr. Larson's reference to the plaintiff having previously been given a Global Assessment of Functioning, "GAF,"[5] score of 50 by the Riverside County Department of Mental Health. [AR 602.] Even were the prior report an unacceptable source, however, Dr. Larson did not blindly adopt it but, rather, simply agreed with it based upon his independent examination, stating that "he chose the same diagnosis because [it] appear[ed] to be reasonable." [AR 610.]

---

[5] The GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment. A GAF score between 41 and 50 indicates "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders p. 32 (4th ed. 1994 (DSM-IV)) (emphasis in original).

9

Thus, in the absence of legally sufficient reasons either for rejecting Dr. Larson's opinion, or for limiting plaintiff only to unskilled work with an SVP 2 without accounting for the other impairments found by Dr. Larson, the RFC lacks the support of substantial evidence. Moreover, the error here is not harmless. While the RFC limitations found here might fairly be deemed comparable to Dr. Larson's first opined limitation to simple work, see e.g., SSR 85-15; Meissl v. Barnhard, 403 F. Supp. 981 (C.D. Cal. 2005), they do not encompass the final two opined limitations, which relate to plaintiff's social abilities and ability to adapt to changes in the workplace [AR 610].

For these reasons, the court will reverse the Commissioner's decision with respect to issues one through three.

When no useful purpose would be served by further administrative proceedings, and where the record has been fully developed, upon reversal the court has discretion remand and to direct an immediate award of benefits. Harman v. Apfel, 211 F.3d 1172, 1175-1179 (9th Cir. 2000) (decision whether to remand for further proceedings turns upon their likely utility). When there are outstanding issues that must be resolved before a determination can be made, however, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, a remand for further proceedings is appropriate. Id.

Here, because the VE was not asked to consider the limitations opined by Dr. Larson, [see AR 703-04], the court is unable to gauge whether the mental impairments he opined render plaintiff incapable of any substantial gainful employment. The court may not, therefore, remand with an order for immediate payment of benefits and will

instead remand for further administrative proceedings. See e.g., Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1136 (9th Cir. 2011) (remand for automatic payment of benefits inappropriate unless evidence unequivocally establishes disability).

Additionally, however, in situations such as the one present here, in which the ALJ's assessment of a medical source opinion was found not to be based on legally sufficient reasons, the remand may be made with instructions that the Commissioner credit the medical source opinion as true, depending upon the court's evaluation of factors such as the length of the delay since the application for benefits was filed and the age of the applicant. See Page v. Comm'r, 304 Fed. Appx. 520, 522 (9th Cir. 2008) (ordering remand with instructions to give full consideration to improperly rejected testimony when plaintiff was of advanced age and has experienced significant delay). Due to the extreme delay occasioned by the two prior remands to address the Commissioner's assessment of evidence in this case, it is appropriate that this matter be remanded for a third administrative hearing at which the Commissioner shall include the three mental functioning limitations opined by Dr. Larson within the RFC and present a new hypothetical to a VE.

**E.   ISSUE FOUR: TREATING PAIN SPECIALIST**

Next, plaintiff contends the ALJ did not articulate legally sufficient reasons for discounting the findings of her treating pain specialist, Bryant Leung, M.D.

Dr. Leung, a board-certified specialist in Pain Medicine, Physical Medicine and Rehabilitation, and Electrodiagnostic Medicine, examined and treated plaintiff approximately a dozen times in 2007 and 2008. He found, among other things, that plaintiff has limited arm

11

strength due to pain, allodynia, hyperalgesia to light touch on palpation over the right wrist hand, and medial forearms, diffused soft tissue swelling over the right hand and wrist, and a mild tremor of the right upper extremity at the wrist, purplish discoloration of the right hand, a limited range of motion. [E.g., AR 632-34, 644.] Based upon his various findings, Dr. Leung diagnosed plaintiff with chronic pain due to complex regional pain syndrome – related to a 1996 carpal tunnel release – and with probable left-sided ulnar neuritis. [E.g., AR 634, 644.] He prescribed various pain treatments or medications, and he recommended modified activity, a home exercise regimen, and relevant follow up care or treatment by other providers. [E.g., AR 644.] His records do not include an opinion about plaintiff's functional abilities.

The ALJ rejected Dr. Leung's reports for two reasons. First, the ALJ concluded Dr. Leung falsified or exaggerated his findings. Specifically, the ALJ noted that: (1) on August 31, 2007, the first-page of Dr. Leung's report refers to a male patient; (2) two of his reports contained apparently erroneous sets of entries relating to a cervical spine condition; and (3) the notes regarding an examination of plaintiff's upper right extremity were identical in separate reports. [AR 552]. Second, the ALJ noted that Dr. Leung reported plaintiff had soft tissue nodules in the ulnar area of her right palm, whereas a November 19, 2008, magnetic resonance image of the right wrist showed no fluid collection or mass in the wrist joint [AR 552-53.]

The ALJ then adopted the RFC opined by a one-time consultative examining orthopedist who did not review plaintiff's medical records. [AR 553.] The ALJ did not weigh Dr. Leung's findings with those of

the consultative examiner or of any other physician of record. [See id.]

The Social Security Administration is to favor the opinion of a treating physician over those of non-treating physicians, however, and treating physicians' opinions are entitled to great deference. Orn v. Astrue, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527; Soc. Sec. Ruling 96-2p). If a treating physician's opinion is not contradicted by another doctor's, the ALJ may reject it only for "clear and convincing" reasons, and even a contradicted opinion may be rejected only for "specific and legitimate" reasons. Id., 495 F.3d at 631-32. The ALJ can meet this obligation by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. Here, these standards are not met.

First, the court is not persuaded that the record suggests Dr. Leung falsified or exaggerated his reports. An apparent clerical error and overall stable findings do not support a conclusion that a physician did not examine plaintiff as reported. Furthermore, with respect to the mention of a palmar mass, the report the ALJ refers to is not a report by Dr. Leung, but by an orthopedic surgeon who consulted with plaintiff in August 2008.[6] [AR 683-85.] Finally, the ALJ did not "set[] out in detail" his interpretation of Dr. Leung's examination or "mak[e] findings" with respect to Dr. Leung's reports and those of other physicians of record. See Orn v. Astrue, 495 F.3d at 631-32.

Accordingly, in order to ensure the record in this matter is

---

[6] The court does not find, moreover, that the surgeon's report lacks credibility due to the November MRI results.

fully developed, on remand the ALJ shall re-contact Dr. Leung to obtain his assessment of plaintiff's RFC, see 20 C.F.R. 404.1512(e), and make legally sufficient findings weighing his reports in light of the other clinical evidence in the record.

### F. ISSUE FIVE: CREDIBILITY

Plaintiff next claims the credibility evaluation was not legally sufficient. Because the credibility assessment turns on the ALJ's rejection of plaintiff's allegations of pain and mental impairment, [AR 554], and in light of the prior discussion regarding plaintiff's pain specialist and psychologist, plaintiff's credibility should be reassessed on remand.[7]

### G. ISSUE SIX: CLOSED PERIOD

Finally, plaintiff asks the court to consider whether to order a closed period of benefits starting in 2002 and ending at some time before her last hearing. She does not, however, specify during what time period she believes she was disabled or point to evidence that

---

[7] Moreover, the credibility findings are legally insufficient. Specifically, for example, the ALJ finds plaintiff's allegations of pain and mental impairment are unsupported by her daily activities of living with children, engaging in self-grooming, cooking, and doing some household chores. But daily activities support an adverse credibility finding only if the plaintiff is "able to spend a substantial part of [the] day" engaged in tasks that would be transferable to a work setting. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ must make "specific findings relating to [those] activities" and how they are transferrable. Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ does not meet these standards here. The ALJ's reference to a one-time mention of plaintiff having an interest in "gardening, walking, swimming, and football," [AR 554, 684], is not persuasive. A review of the record as a whole does not support the ALJ's inference that plaintiff herself engaged in all of these activities or that she has done so since her alleged onset date.
Further, the ALJ finds plaintiff's statements lack credibility in part because "during Dr. Leung's examinations, the only psychiatric problem [she] mentioned was a history of fatigue." [AR 554.] A review of the record shows, however, that plaintiff told her treating physician, Dr. Leung, that she has "a history of depression, mood swings, and fatigue." [AR 619.]

14

she was entirely unable to work during any particular time.  The court's review of the record suggests further findings must be made before a closed period of disability could be found.

On remand, if plaintiff is found not to be currently disabled, and in order to fully develop the record, the ALJ also shall evaluate whether plaintiff was disabled at any time since her alleged onset date.

### V. ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **REVERSED.**

2. This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. §405(g), for further administrative proceedings consistent with instructions set forth in the body of the decision.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: May 25, 2011

_____
CARLA M. WOEHRLE
United States Magistrate Judge